IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HENRY P.,[1]                                )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )   Case No. 20-cv-1142-RJD[2]
                                            )
COMMISSIONER of SOCIAL SECURITY,            )
                                            )
                Defendant.                  )
                                            )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI and DIB in July 2018 (Tr. 170-171, 181).   Defendant issued separate Notices of Disapproved Claims on August 17, 2018 and September 27, 2018 (Tr. 80-93). Plaintiff sought reconsideration, and a hearing was held by ALJ Jason Panek on December 11, 2019 (Tr. 32).   ALJ Panek issued an unfavorable decision dated February 12, 2020 (Tr. 12-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1-6).   Administrative remedies have been exhausted and a timely complaint was filed in this

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns.   See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.

2. The ALJ's decision does not properly evaluate opinion evidence.

## Applicable Legal Standards

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes[3].   Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled.   A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four.   Once the plaintiff shows an

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).    This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

In his opinion, ALJ Panek followed the five-step analytical framework described above. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2021, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 20, 2017.

The ALJ found that Plaintiff had severe impairments of Charcot's arthropathy of the left foot, degenerative disc disease of the lumbar spine, diabetes mellitus and obesity.   The ALJ found that Plaintiff had the residual functional capacity (RFC) to do work at the sedentary level with the following exceptions and/or qualifications: can lift and carry up to twenty pounds occasionally and less than ten pounds frequently; can stand or walk for two hours and sit six hours in an eight-hour workday; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and he should avoid concentrated exposure to extreme cold and hazards.

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was not able to do his past relevant work.   However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to Plaintiff's arguments.

**1.  Agency Forms**

Plaintiff was born in 1978 and was 41 years old on the date of the ALJ's decision.   (Tr. 181).   He said he was disabled because of osteoarthritis, permanent plantar fasciitis, Charcot foot deformation, rocker foot, neuropathy, unsteadiness/balance, chronic pain, depression.   Plaintiff said he stopped working on June 20, 2017 because of his condition.   He had worked as a stocker in retail (Tr. 206-208).

Plaintiff completed an Adult Function Report on September 2, 2018 (Tr. 213-37). Plaintiff indicated that "walking is a chore in itself" and he constantly tries to keep his balance so he does not fall over.   Plaintiff also stated that "the chronic pain shocks [him] day and night." Plaintiff reported he could only walk for approximately ten feet before he needed to rest for 5-20 minutes (Tr. 231).

Plaintiff also indicated he has difficulty with his personal care activities, but is able to sit and cook and do dishes (Tr. 223, 235).   He is also able to shop once a month using an electric cart and is able to manage his finances (Tr. 227).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the December 11, 2019 hearing (Tr. 32). Plaintiff worked most of his adult life at Home Depot, unloading pallets, loading pallets, helping cut wood, sometimes driving equipment, and engaging in other tasks around the store (Tr. 38-39). Plaintiff last worked at Home Depot in 2014, and was subsequently placed on FMLA in 2015 (Tr. 39).   Plaintiff left his job at Home Depot when he developed cellulitis in his left leg and a foot ulcer on the bottom of his foot (Tr. 38).   Plaintiff briefly worked at Amazon in 2016, and was made to stop when he developed cellulitis in his second right toe (Tr. 40, 46).

Plaintiff testified he cannot walk or stand for more than five or ten minutes.   He cannot sit for long before needing to elevate his left leg above his heart, per his doctor's instructions, and he indicated he lays down most of the day (Tr. 40).   Plaintiff indicated he spends at least seventy-five percent of the day with his foot elevated (Tr. 47).   Plaintiff currently takes over-the-counter pain medication for his foot pain, and his treatment is limited to therapeutic insoles and diabetic footwear (Tr. 41).   Plaintiff has a cane on the suggestion of his doctor to help with his balance on

uneven surfaces and stairs (Tr. 45).   He has fallen at least three times (Tr. 45).

A vocational expert (VE) also testified.   The VE testified that a person with Plaintiff's RFC assessment could not do Plaintiff's past work, but he could do other sedentary jobs such as assembler, order clerk, and document preparer or scanner (Tr. 49-50).   The VE also testified that if an individual needed to elevate their leg to chest level for seventy-five percent of the workday, there would not be any work for them in the national economy.

### 3.   Relevant Medical Records

Plaintiff was diagnosed with diabetes in early 2014 and presented with an ulcer on the sole of his left foot in February 2014 (Tr. 277).   Plaintiff reported very diminished sensation of both feet, but he walked well, and it was noted that he worked at Home Depot (*Id.*).   During a follow-up in August 2014, it was noted Plaintiff was suffering from cellulitis of his left foot, diabetes mellitus with foot ulcer, and diabetic Charcot's foot (Tr. 348).   X-rays of Plaintiff's left foot taken in June 2015 showed severe bony destruction involving the tarsal bones with marked bone destruction and reactive sclerosis (Tr. 372-73).   In April 2016, Plaintiff's foot pain was assessed, and he was again diagnosed with Charcot arthropathy of the left foot in April 2016 (Tr. 436).   Per his physician, Dr. Kee, Plaintiff was limited to standing on his foot no more than three hours per day, and he was able to do all sedentary work duties with no limitations (Tr. 436).

In late-2016 to early-2017, Plaintiff restarted his diabetes medication (Tr. 511-516).   An examination in July 2017 found no abnormal physical findings, and it was noted his feet showed a normal appearance (Tr. 509).   At a follow-up appointment in January 2018, it was noted that Plaintiff's A1c was "much improved" from 9.4 to 8.5, and his feet continued to show a normal appearance and maintained normal sensation (Tr. 505).   His feet again showed a normal

appearance and normal sensation in July 2018 (Tr. 501).

In September 2018, Dr. Adrian Feinerman performed a consultative examination at the request of the agency (Tr. 533-43).   Plaintiff had some swelling in both legs, decreased range of motion in his hips and knees due to obesity, moderate difficulty squatting and arising, and mild difficulty getting on and off the exam table, tandem walking, and standing on his toes and heels. Although Plaintiff brought a cane, he was able to ambulate 50 feet without an assistive device.

Plaintiff refused a foot exam during an appointment with a nurse practitioner in April 2019 (Tr. 623).   During a follow-up examination with the nurse practitioner in May 2019, examination revealed Plaintiff had normal coordination and gait and no swelling, but had decreased sensation to the plantar aspect of his left foot and calluses were present to the heel (Tr. 617).   In June 2019, Dr. Kee noted loss of sensation, and found Plaintiff had a significant collapse of his left foot with midfoot degenerative joint disease due to Charcot arthropathy (Tr. 574).   Plaintiff was prescribed diabetic shoes and insoles (*Id.*).

### 4.   State Agency Consultants' Opinions

On September 26, 2018, Calixto Aquino, M.D., reviewed Plaintiff's treatment records, as well as the consultative examination report from Adrian Feinerman, M.D. from September 2018. Dr. Aquino found that Plaintiff could: occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; and avoid concentrated exposure to extreme cold or hazards such as machinery and heights (Tr. 52-63).

State agency physician Charles Kenney, M.D., reviewed Plaintiff's updated records and

Dr. Feinerman's report on November 21, 2018, and agreed with Dr. Aquino's conclusions (Tr. 65-76).

## Analysis

Plaintiff asserts the ALJ's decision failed to properly consider Plaintiff's subjective complaints because he failed to consider Plaintiff's foot pain, neuropathy, and balance issues. Plaintiff also complains the ALJ failed to explain why he did not believe Plaintiff's statements regarding his pain and limitations.

The regulations set forth a two-step process for evaluating a claimant's subjective reports of symptoms, including pain.   20 C.F.R. § 404.1529; *see also* SSR 16-3p[4].   First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged.   § 404.1529(a).   Second, if the claimant has such a medically determinable impairment, the ALJ evaluates the intensity and persistence of the claimant's symptoms and determines the extent to which those symptoms limit the claimant's capacity to work.   § 404.1529(c).     In doing so, the ALJ may look to the claimant's reported activities, including from non-medical sources such as family and friends, and the treatment he received and may find the claimant's daily activities demonstrate functioning that suggests the plaintiff is not as limited as his testimony might suggest.   *See Burmester v. Berryhill*,

---

[4]  In his brief, Plaintiff relies on 20 C.F.R. § 404.1529(b)(c) and SSR 96-7p.   SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements.   SSR 16-3p became effective on March 28, 2016 and is applicable here.   2017 WL 5180304, at *1.     SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character."   SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529.

920 F.3d 507, 510-11 (7th Cir. 2019); 20 C.F.R. § 404.1529(a); SSR 16-3p.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Plaintiff asserts the ALJ failed to consider his complaints of pain, despite articulating difficulties with the same at the hearing and in his Adult Function Report. Defendant contends the ALJ explained that Plaintiff's subjective allegations were not fully supported by the objective medical evidence, and argues the ALJ was not required to specifically address pain as it is not a functional limitation. Further, Defendant contends the ALJ referenced Plaintiff's pain throughout his decision, and ultimately relied on the opinions of Drs. Aquino and Kenney that, notwithstanding Plaintiff's pain, he could perform sedentary work. The Court agrees with Defendant that the ALJ's credibility assessment was sufficient. Indeed, as argued by Defendant, an ALJ is not required to do a "point-by-point credibility assessment" as long as he "consider[ed] the relevant evidence, compare[d] the consistency of [Plaintiff's] testimony against the objective record and ground[ed] his credibility finding in medical evidence." *McCurrie v. Astrue*, 401 F. App'x 145, 149 (7th Cir. 2010). Here, the ALJ conducted a thorough analysis of Plaintiff's medical history and objective medical findings, specifically noting that despite Plaintiff's

complaints of falling, needing to elevate his leg, and pain in his foot, physical examinations throughout 2019 showed no edema and normal range of motion.   The ALJ also analyzed Plaintiff's medical records and evidence from 2014 through 2019 and considered the shifting nature of his condition and complaints, noting his diabetes was better controlled in 2018 and that his physical examinations were normal at that time.   Further, the ALJ specifically pointed to the fact that Plaintiff's alleged limitations are inconsistent with his treatment history, mostly normal physical examinations, treatment recommendations, and his ability to perform most of his activities of daily living, including preparing meals, performing household tasks, shopping, and taking care of finances.

Plaintiff also briefly mentions in a somewhat undeveloped argument that the ALJ failed to consider Plaintiff's concentration problems due to pain and his balance issues as a result of Charcot foot.   These arguments are borderline frivolous upon review of the ALJ's decision.   The ALJ discussed Plaintiff's claims that he had difficulty concentrating and rejected the same based on Plaintiff's normal mental examinations and findings of state agency psychological consultants who found that Plaintiff had no more than mild limitations in any functional area.   With regard to issues concerning balance, the ALJ restricted Plaintiff from working around hazards such as machinery and heights to avoid aggravating his Charcot arthropathy.

For these reasons, the Court finds the ALJ's conclusion was supported by the evidence and was not "patently wrong;" it must therefore be upheld.   *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

For his second point, Plaintiff argues the ALJ did not properly evaluate the medical opinions in the record.   More specifically, Plaintiff complains the evidence in the record does not

support and is not consistent with the opinions of Drs. Aquino and Kenney, which the ALJ found persuasive. Plaintiff also argues the ALJ failed to discuss how Dr. Feinerman's findings that Plaintiff had "mild" difficulty getting on and off the exam table, tandem walking, standing on his heels or toes, and difficulty arising out of a chair, and "moderate" difficulty squatting and rising affect the RFC.

With regard to the opinions of Drs. Aquino and Kenney, Defendant first contends that Plaintiff's objection to the ALJ's reliance on their opinions must fail because Plaintiff has not pointed to an alternative opinion that supported greater limitations that the ALJ should have relied on instead. While the Court agrees that Plaintiff failed to point to an alternative opinion, the Court considers the substance of Plaintiff's argument to ensure completeness of the record as it appears NP Meaghan Ziegler set forth opinions considering greater limitations than Drs. Aquino and Kenney. The Court, however, notes Plaintiff has forfeited arguments concerning the ALJ's handling of NP Ziegler's opinions and the persuasive value assigned to the same by the ALJ. *See Sansone v. Brennan*, 917 F.3d 975, 983 (7th Cir. 2019) (arguments not raised and supported are forfeited).

An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are the supportability and consistency of

the opinion.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Although the ALJ must consider all of these factors, she need not discuss each factor in her opinion; the ALJ need discuss only the supportability and consistency factors.   20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Plaintiff sets forth a patchwork of arguments (some clearer than others) concerning the opinions of Drs. Aquino and Kenney, which the Court attempts to discern and address in turn. First, Plaintiff asserts the ALJ's conclusion that the findings of Drs. Aquino and Kenney are consistent with noted erythema and black discoloration of the second toe of the right foot "is confusing and does not explain anything."   Plaintiff further asserts the opinions of Drs. Aquino and Kenney do not provide adequate explanation of how the medical evidence of record supports the conclusions and limitations.   Plaintiff also makes an effort to discount the consistency of the opinions because they were rendered "prior to the creation of some evidence" — mainly, a June 2019 podiatrist visit.

The Court finds Plaintiff's arguments to be misplaced.   At the outset, the Court notes it is unaware of any authority requiring state agency examining physicians such as Drs. Aquino and Kenney to specify which examination findings correlate to specific limitations, and Plaintiff has failed to point to any such authority.   Thus, Plaintiff's concern regarding this point is wholly without merit.   With regard to the relevant issues, consistency and supportability, the Court finds the ALJ adequately addressed the same, as is all that is required.   While Plaintiff found the ALJ's discussion of erythema and black discoloration of the second toe of the right foot "confusing," it is reasonable to conclude that an individual with such symptoms would need to sit for most of the day, as was recommended by Drs. Aquino and Kenney.   The Court finds the ALJ adequately summarized the findings of the medical records made by Drs. Aquino and Kenney, such as the

observation that Plaintiff used a non-prescribed cane despite being able to ambulate fifty feet unassisted, and found their opinions were well supported and consistent.   Nothing else was required.

With regard to Plaintiff's complaint that the ALJ failed to discuss how Dr. Feinerman's findings that Plaintiff had "mild" difficulty getting on and off the exam table, tandem walking, standing on his heels or toes, and difficulty arising out of a chair, and "moderate" difficulty squatting and rising affect the RFC, this argument has no merit.   As noted by Defendant, Drs. Aquino and Kenney considered and discussed Dr. Feinerman's report.   Further, it is Plaintiff's burden to show he was unable to do sedentary work, and he has failed to demonstrate how these findings of Dr. Feinerman would preclude the range of sedentary work contemplated by the RFC.

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax."   *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).   The Court finds that the ALJ met the minimal articulation standard here.

## <u>Conclusion</u>

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Page **13** of **14**

**DATED: March 3, 2022**

_s/ Reona J. Daly_

**Hon. Reona J. Daly**
**United States Magistrate Judge**